UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A.M., by her mother and next friend, E.M.,   )<br>)<br>Plaintiff,   )<br>)<br>v.   )<br>)<br>INDIANAPOLIS PUBLIC SCHOOLS;   )<br>SUPERINTENDENT, INDIANAPOLIS   )<br>PUBLIC SCHOOLS, in her official capacity,   )<br>)<br>Defendants,   )<br>)<br>v.   )<br>)<br>STATE OF INDIANA,   )<br>)<br>Intervenor.   ) | Case No. 1:22-cv-1075-JMS-DLP |

**BRIEF IN SUPPORT OF MOTION TO EXCLUDE OPINIONS OF FORTENBERRY**

THEODORE E. ROKITA
Attorney General of Indiana

THOMAS M. FISHER
Solicitor General

JAMES A. BARTA
Deputy Solicitor General

JULIA C. PAYNE
MELINDA R. HOLMES
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
Indianapolis, Indiana 46204
Tel: (317) 232-6255
Fax: (317) 232-7979
Email: Tom.Fisher@atg.in.gov

*Counsel for Intervenor State of Indiana*

To be considered in connection with a preliminary injunction, expert opinions must meet the standards set forth in the Federal Rules. Those standards include disclosure requirements designed to ensure fairness and substantive requirements designed to promote reliable decision-making. The expert testimony that A.M. offers from James D. Fortenberry, particularly regarding athletic performance and competitive advantages in sports, fails to meet those requirements. Fortenberry did not adequately disclose his opinions on athletic performance, is not qualified to offer those opinions regardless, and cannot show they are grounded in sufficient data and reliable methods. The Court should disregard Fortenberry's opinions on athletic performance, competitiveness, and transgender athletes in considering A.M.'s motion for a preliminary injunction.

## BACKGROUND

Shortly after this case was filed, A.M. moved for a preliminary injunction to enjoin enforcement of HEA 1041. ECF No. 8. The motion was accompanied by an expert declaration from James D. Fortenberry, a medical doctor who works with persons with gender identity issues. ECF No. 8-1 ¶¶ 2, 5. The declaration offered expert opinion on a variety of topics, including athletic performance. *See, e.g.*, *id.* ¶¶ 39–41. Its contents are discussed at greater length in the State's opposition to A.M.'s motion for a preliminary injunction being filed contemporaneously.

At a status conference on May 31, 2022, A.M.'s counsel requested a briefing schedule that would allow the Court to issue a decision before the start of IPS's softball season in August 2022. Counsel stated that A.M. would file a brief in support of the motion by June 2, 2022, indicating that A.M. would rely only on the expert declarations disclosed with the preliminary-injunction motion. The IPS defendants and the State agreed to file responsive briefs and provide any expert disclosures by June 17, 2022. The Court confirmed those disclosure and responsive briefing deadlines in a minute order issued after the status conference. ECF No. 26 ¶¶ 4–5.

After the conference, A.M.'s counsel offered to make Fortenberry available for a deposition on June 13, 14, or 15. Ex. 1. The deposition was scheduled for June 13, 2022, and held on that day. Ex. 2. On June 17, 2022—the day that the IPS defendants and the State were due to disclose their experts and file their briefs in opposition to A.M.'s motion—A.M. served a supplemental declaration from Fortenberry addressing issues raised at the deposition. Ex. 3.

## ARGUMENT

Violations of both procedural and substantive requirements require disregarding Fortenberry's opinions on athletic performance, competitiveness, and transgender athletes in connection with A.M.'s motion for a preliminary injunction.

**I.     Inadequate Disclosure Requires Exclusion Under Rules 26 and 37**

To start, Fortenberry's opinions were not adequately disclosed. Under Federal Rule of Civil Procedure 26, an expert must provide in writing a "complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). The statement must be "detailed and complete," not "sketchy and vague." Fed. R. Civ. P. 26 advisory committee's note to 1993 Amendment. It must, for example, include what information the expert "considered, read, thought about or relied upon," *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998); *see Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) (expert "must disclose . . . whatever materials are given him to review in preparing his testimony, even if in the end he does not rely on them"). And it must "explain why [the expert] reached [a] conclusion," *Cripe v. Henkel Corp.*, 858 F.3d 1110, 1112 (7th Cir. 2017), setting forth any relevant "figures and assumptions" behind the expert's conclusions, *Karum Holdings LLC v. Lowe's Companies, Inc.*, 895 F.3d 944, 952 (7th Cir. 2018).

Fortenberry's expert declaration—his disclosure—is deficient. It does not disclose all the materials Fortenberry read or considered; Fortenberry conceded at his deposition that the declaration "didn't cite every reference," and he "d[id]n't know" which references he chose not to include. Ex. 5 to the State's Mem. in Opp. to the Pl.'s Mot. for a Preliminary Inj., Deposition of James D. Fortenberry, M.D., M.S. ("Fortenberry Dep."), 78:2–7, 115:9–10; *see id.* at 78:9–10 ("I did not put this list together as a comprehensive list."). That makes it nigh impossible to know from Fortenberry's disclosure whether he reviewed all relevant information, whether he saw materials that undermined his conclusions, and whether he accounted for them. The declaration, moreover, contains no "in-line citations," "obscuring the sources of its claims and masking which claims have no source at all." Ex. 9 to the State's Mem. in Opp. to the Pl.'s Mot. for a Preliminary Inj., Declaration of James M. Cantor, PhD ("Cantor Decl."), ¶ 8. The declaration refers vaguely to unspecified "[r]esearch" and "document[ation]." ECF No. 8-1, ¶¶ 28, 37; *see id.* ¶ 39 (similar).

Exclusion is required. Under Federal Rule of Civil Procedure 37, if a party fails to make disclosures "as required by Rule 26(a)," "the party is not allowed to use" the expert's testimony "on a motion" or "at a hearing." Fed. R. Civ. P. 37(c)(1). That "sanction is automatic and mandatory unless the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (internal citations and quotation marks omitted). Fortenberry's failures were neither. The purpose of expert disclosures "is to provide notice to opposing counsel—before the deposition—as to what the expert witness will testify." *Id.* at 642. Where an expert report does not list all materials the

expert considered, indicate where an expert is relying on others' views, or disclose whose views those are, the disclosure requirement's purpose is frustrated. *See Fid. Nat'l*, 412 F.3d at 751.[1]

## II.     Federal Rule of Evidence 702 and *Daubert* Require Exclusion

### A.     Fortenberry is not an athletic-performance expert

Fortenberry is not qualified to offer opinions on athletic performance regardless. To be admissible, expert opinion must be rooted in superior "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. An expert opinion's subject matter thus must fall within the testifying expert's particular specialty. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999). An expert, "however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002); *see Braun v. Lorillard Inc.*, 84 F.3d 230, 235–36 (7th Cir. 1996).

That limitation requires disregarding Fortenberry's opinions about athletic performance, competitiveness, and transgender athletes here. Fortenberry holds no professional education, training, or credentials in athletic performance or sports medicine, Fortenberry Dep. 10:14–16:2, 176:22–23; he does not "assess athletic performance," *id.* at 172:4; and does no "research on athletic performance," *id.* at 17:18–20.

That Fortenberry is not an expert in athletic performance or sports is evident from his answers to substantive questions. When asked to name the "leading scholars and researchers in the area of prepubertal biologic development and the differences in size, weight, strength, athletic ability, between boys and girls, prepuberty," Fortenberry could not name any. Fortenberry Dep. 25:19–24. Nor did he have sufficient familiarity with sports policies governing transgender

---

[1] Fortenberry's supplemental declaration—filed after his deposition and the day the State's brief was due—cannot cure the failure. It comes too late, *see Ciomber*, 527 F.3d at 642, and more important, nowhere addresses the topic of athletic performance, *see* Ex. 3.

participation to be able to "discuss them." *Id.* at 176:1–2; *see id.* 176:16–19 (admitting to not knowing the "basic factors" that should inform decisions about performance-enhancing drugs in sports). Similarly, when asked what besides testosterone "can contribute to the differences in athletic performance," Fortenberry responded with "the ones that make some people just better than others." *Id.* at 171:23–172:1. And when asked what "primary physical measures that [he] would rely on in assessing athletic performance," he identified none. *Id.* at 172:2–5.

The mere fact that Fortenberry mentioned a few papers at his deposition discussing athletic performance does not qualify him to offer opinions on whether boys have biological advantages over girls in sports, when those biological advantages express themselves in sports, and whether puberty blockers can fully neutralize them. He—unlike Drs. Emma Hilton and Tommy Lundberg—is not a specialist in those areas. So Fortenberry "is not permitted to be the mouthpiece" of the "authors" he mentioned. *Dura*, 285 F.3d at 614; *see Jones*, 188 F.3d at 724. Accepting Fortenberry's opinions about research conducted by experts in a different scientific specialty "would not be responsible science." *Dura*, 285 F.3d at 614.

**B.     Fortenberry's opinions on performance are not reliable**

Pervasive methodological issues also deprive Fortenberry's opinions of any value. Expert opinion must be "based on sufficient facts or data" and be "the product of reliable principles and methods" "reliably applied." Fed. R. Evid. 702(b)-(d); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–90 (1993). Experts may not offer "subjective belief or unsupported speculation." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). Generally, "key" considerations in evaluating a method includes whether it "can be (and has been) tested," whether it is "subjected to peer review," the potential for error, and its acceptance within the relevant

5

scientific community. *Daubert*, 509 U.S. at 593–94. An expert's proponent must show those standards are met. Fed. R. Evid. 702 advisory committee notes to 2000 Amendment.

A.M. has not shown Fortenberry's opinions on athletic performance meet those standards. Fortenberry could not muster any studies or data supporting his conclusion. To get there, he admitted, "I really have to extrapolate" from the assumption that prepubescent athletes are "not different" and that heightened testosterone production "is blocked." Fortenberry Dep. 173:6–16; *see id.* 174:7–17 (admitting ¶ 41 of his declaration is "extrapolation"). Fortenberry, however, lacked sufficient facts or data for his baseline assumption that prepubescent boys and girls perform the same in sports. Although Fortenberry claimed that "a Tonnessen paper" supported his assumption—a paper not disclosed in his report, Fortenberry Dep. 172:14–173:5—Tønnessen actually found performance differences in 11-year-old boys and girls (the youngest age studied), Ex. 7 to the State's Mem. in Opp. to the Pl.'s Mot. for a Preliminary Inj., Declaration of Tommy Lundberg, PhD ("Lundberg Decl."), ¶ 5.8. And other studies have found meaningful differences at even younger ages. *See id.* ¶¶ 5.6–5.7, 5.9–5.11; Ex. 6 to the State's Mem. in Opp. to the Pl.'s Mot. for a Preliminary Inj., Declaration of Emma Hilton, PhD ("Hilton Decl."), 11–15 ¶¶ 4.2–4.6.

Whether Fortenberry was even aware of those studies is far from clear. Despite professing an "inten[t]" to be educated about differences between prepubertal boys and girls in athletic ability, he could not name any of the "leading scholars and researchers" who study those differences. Fortenberry Dep. 25:19-26:3. Moreover, even Fortenberry agreed that his "extrapolation" might be fallible if puberty blockers are started late. That is "an unknown space" for which there is "no data," he admitted. *Id.* at 173:21–174:4. Those admissions belie any claim that Fortenberry had "sufficient facts or data" to opine about differences in athletic ability and that he "reliably" applied "reliable" methods to arrive at his views. Fed. R. Evid. 702(b)–(d).

Similar methodological problems pervade Fortenberry's opinions on other subjects. His declaration omits the "great majority of the relevant published research" in discussing matters within his field of sexuality. Cantor Decl. ¶ 13; *see id.* ¶¶ 14–16. And it relies on sources of "very low quality," *id.* ¶ 11—including "editorials," opinion letters, and materials from a "social justice policy advocacy organization." Fortenberry Dep. 78:19–85:17. Fortenberry, for example, invoked studies found to be of "very low quality" by "several national governments," Cantor Decl. ¶ 11, and a study from Olson whose findings were later shown to be "statistical errors," *id.* ¶ 12. Yet Fortenberry's declaration nowhere acknowledges the more "recent work" that "could call its conclusions into question." *Cripe v. Henkel Corp.*, 858 F.3d 1110, 1113 (7th Cir. 2017).

Other methodological errors undermining his opinions' reliability abound. While Fortenberry claims social transition benefits transgender youth, two of his sources—Russell and Toomey, Fortenberry Dep. 153:5–23—confuse correlation with causation, Cantor Decl. ¶ 30. And sources cited in his supplemental declaration are not "treatment studies at all." *Id.* ¶ 31. Fortenberry ignored "more advanced studies" with contrary findings, such as a study showing "social support"—not "transition"—to decrease suicidality. *Id.* ¶¶ 30, 89; *see id.* ¶¶ 83–91. That Fortenberry made such errors raises significant questions about the soundness of his overall approach, particularly with respect to athletic performance issues.

## CONCLUSION

The Court should exclude Fortenberry's opinions on athletic performance, competitiveness, and transgender athletes from consideration in connection with A.M.'s motion.

| | |
|---|---|
| Office of the Indiana Attorney General<br>IGC-South, Fifth Floor<br>302 West Washington Street<br>Indianapolis, Indiana 46204-2770<br>Telephone: (317) 232-6255<br>Fax: (317) 232-7979<br>Email: Tom.Fisher@atg.in.gov | Respectfully submitted,<br><br>Theodore E. Rokita<br>Indiana Attorney General<br><br>By:  */s/ Thomas M. Fisher*<br>Thomas M. Fisher<br>Solicitor General<br><br>James A. Barta<br>Deputy Solicitor General<br><br>Julia C. Payne<br>Melinda R. Holmes<br>Deputy Attorneys General |