UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| A.M., by her mother and next friend, E.M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:22-cv-1075-JMS-DLP |
| INDIANAPOLIS PUBLIC SCHOOLS; | ) | |
| SUPERINTENDENT, INDIANAPOLIS | ) | |
| PUBLIC SCHOOLS, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF INDIANA | ) | |
| | ) | |
| Intervenor. | | |

**INTERVENOR STATE OF INDIANA'S ANSWER
AND DEFENSES TO PLAINTIFF'S COMPLAINT**

Intervenor State of Indiana files its answer to the complaint filed by Plaintiff A.M., by

mother and next friend E.M., and responds as follows:

**Introduction**

1. A.M. is a 10-year-old girl who enjoys playing on her school's all-girls softball team that

will again be competing against other schools with similar teams beginning in August of this

year. However, Indiana House Enrolled Act ("HEA") 1041 (eff. July 1, 2022), denies A.M. the

ability to rejoin her team because she is transgender. The statute prohibits A.M., and all

transgender female students in Indiana, from participating in female-only sports because they are

girls who are transgender. This is so even though A.M. has lived as a girl since before she was 4

years of age and even though the State of Indiana has recognized that she is female by changing

her gender marker to female on her birth certificate following a court hearing. A.M. is taking a

puberty blocker that prevents her from developing physiological characteristics associated with

typical male puberty. All her friends and peers know her only as a female because she is female.

> **ANSWER:** HEA 1041 speaks for itself. The State denies that it has recognized that she is
>
> female by changing her gender marker to female on her birth certificate following a court
>
> hearing. The State is without information or knowledge sufficient to form a belief as to
>
> the truth of the remaining allegations in paragraph 1.

2. Preventing A.M. and other transgender girls from participating in girls' athletics is

discrimination on the basis of sex in violation of Title IX of the Education Amendments of 1972,

20 U.S.C. § 1681, et seq. It also represents discrimination on the basis of transgender status, as

well as sex, in violation of the Equal Protection Clause of the United States Constitution. A.M. is

entitled to appropriate declaratory and injunctive relief so she can participate in school sports

with other girls.

> **ANSWER:** The allegations in paragraph 2 set forth legal conclusions that do not require
>
> an answer.

3. This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

> **ANSWER:** The State admits the allegation set forth in paragraph 3.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

> **ANSWER:** The State admits the allegation set forth in paragraph 4.

5. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by

28 U.S.C. §§ 2201, 2202.

**ANSWER:** The cited statutes speak for themselves. The remaining allegations in

paragraph 5 set forth legal conclusions that do not require an answer.

6. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the deprivation, under

color of state law, of rights secured by the United States Constitution and as a private cause of

action directly pursuant to Title IX as authorized by *Cannon v. University of Chicago*, 441 U.S.

677, 717 (1979).

**ANSWER:** The cause of action pleaded speaks for itself, and the remaining allegations

in paragraph 6 set forth legal conclusions that do not require an answer.

**Parties**

7. A.M. is a 10-year-old girl living in Marion County, Indiana. She proceeds in this litigation

by her mother, next friend, and legal guardian, E.M.

**ANSWER:** The State admits that A.M. proceeds in this litigation by E.M. The State is

without information or knowledge sufficient to form a belief as to the truth of the

remaining allegations in paragraph 7.

8. Indianapolis Public Schools is a public-school corporation providing educational services

to students living within its district located in Marion County, Indiana.

**ANSWER:** The State admits the allegations set forth in paragraph 8.

9. The Superintendent of the Indianapolis Public Schools is the duly appointed head of the

school system. She is sued in her official capacity pursuant to Federal Rule of Civil Procedure

17(d).

**ANSWER:** The State admits the allegations set forth in paragraph 9.

**The Statute**

10. House Enrolled Act 1041 was passed by the Indiana General Assembly and sent to the

Governor in March of 2022. It was vetoed by the Governor. However, on May 24, 2022, both

houses of the Indiana General Assembly approved the House Enrolled Act and it therefore

became law. Ind. Const. Art. 5 § 14.

> **ANSWER:** HEA 1041 and its statutory history speak for themselves.

11. Section 1 of the statute, to be codified as Indiana Code § 20-33-13-1 (eff. July 1, 2022),

states:

> This chapter applies to the following:
>
> (1) An athletic team or sport that is organized, sanctioned, or sponsored by a school corporation or public school in which the students participating on the athletic team or in the sport compete against students participating on an athletic team or in a sport that is organized, sanctioned, or sponsored by another school corporation, public school, or nonpublic school.
>
> (2) An athletic team or sport that is organized, sanctioned, or sponsored by a nonpublic school that voluntarily competes against an athletic team or sport that is organized, sanctioned, or sponsored by a school corporation or public school.
>
> (3) An athletic team or sport approved or sanctioned by an association for purposes of participation in a high school interscholastic event.
>
> **ANSWER:** Section 1 of the statute speaks for itself.

12. Section 4 of the statute, to be codified as Indiana Code § 20-33-13-4 (eff. July 1, 2022),

provides that:

> (a) A school corporation, public school, nonpublic school, or association that organizes, sanctions, or sponsors an athletic team or sport described in section 1 of this chapter shall expressly designate the athletic team or sport as one (1) of the following:
>
> > (1) A male, men's, or boys' team or sport.
> >
> > (2) A female, women's, or girls' team or sport.
> >
> > (3) A coeducational or mixed team or sport.

4

(b) A male, based on a student's biological sex at birth in accordance with the student's genetics and reproductive biology, may not participate on an athletic team or sport designated under this section as being a female, women's, or girls' athletic team or sport.

**ANSWER:** Section 4 of the statute speaks for itself.

13. Sections 5-7 of the statute, to be codified at Indiana Code §§ 20-33-13-5 through 7 (eff. July 1, 2022), provide for a grievance procedure for a student or parent who believes that Section 4 has been violated and provides that in the event of a violation, a civil action may be filed and the student or parent may be awarded injunctive relief; actual, consequential, and liquidated damages, costs, and attorney's fees; and all other appropriate relief.

**ANSWER:** Sections 5 through 7 of the statute speak for themselves.

## Factual Allegations

14. Gender identity is a well-established concept in medicine that refers to one's sense of oneself as congruent with a particular gender.

**ANSWER:** The State denies the allegations set forth in paragraph 14 because they are vague and ambiguous.

15. Although research regarding the precise determinants of gender identity is still ongoing, evidence strongly suggest that gender identity has a strong biological basis.

**ANSWER:** The State denies the allegations set forth in paragraph 15 because they are vague and ambiguous.

16. For many persons, one's gender identity is congruent with one's anatomical features, so that persons born with a penis and testes are identified as male at birth and subsequently identify as male; and persons identified at birth by the presence of a vulva subsequently identify as female.

5

**ANSWER:** The State denies the allegations set forth in paragraph 16 because they are vague and ambiguous.

17. Persons whose gender identities are congruent with the sex they were assigned at birth are referred to as "cisgender."

**ANSWER:** The State denies the allegations set forth in paragraph 17 because they are vague and ambiguous.

18. Transgender persons have gender identities that are not congruent with their sex as assigned at birth.

**ANSWER:** The State denies the allegations set forth in paragraph 18 because they are vague and ambiguous.

19. Studies indicate up to 0.6% of adolescent and adult persons in Indiana identify as transgender.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 19.

20. Gender dysphoria is a recognized condition that occurs when a transgender person experiences a constant sense of distress because of the incongruence between their experienced gender and their birth-assigned sex.

**ANSWER:** The State denies the allegations set forth in paragraph 20 because they are vague and ambiguous.

21. Gender dysphoria is manifested by symptoms such as preoccupation with expressing the characteristics of one's experienced gender, hiding or modifying the sex characteristics

6

associated with one's birth-assigned sex, and acquiring the sex characteristics of one's experienced gender. Untreated, gender dysphoria results in significant lifelong distress, clinically significant anxiety and depression, self-harming behaviors, substance abuse, and suicidality.

> **ANSWER:** The State denies the allegations set forth in paragraph 21 because they are vague and ambiguous.

22. In fact, research consistently demonstrates that up to 51% of transgender and gender nonbinary young persons have attempted suicide at least once, compared to 14% of adolescents without gender dysphoria.

> **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.  Gender dysphoria is codified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-V) at 302.6 (for children) and 302.85 (F64.0 for post-pubertal adolescents and adults) and the World Health Organization's International Classification of Diseases 10 (ICD-10) version that became active on October 1, 2021 at F64.2. These are both standard classifications, used worldwide.

> **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 23.

24. The principal treatment for gender dysphoria is to support the young person in full expression of their experienced gender identity. This involves, generally, allowing young people to express their gender through name and pronouns and with social behaviors consistent with their experienced gender. This would include, as is relevant here, participating in sports with persons consistent with their gender identity. This is social transition.

7

> **ANSWER:** The State denies the allegations set forth in paragraph 24 because they are vague and ambiguous.

25. Denying the young person the ability to fully express their gender identity can lead to feelings of shame and unworthiness and increase the potentially debilitating effects of gender dysphoria.

> **ANSWER:** The State denies the allegations set forth in paragraph 25 because they are vague and ambiguous.

26. The ability to engage in social transition is an essential component of amelioration of gender dysphoria that is fundamental to safeguarding current and future mental health and well-being.

> **ANSWER:** The State denies the allegations set forth in paragraph 26 because they are vague and ambiguous.

27. When a transgender child demonstrates the earliest signs of puberty, the current standard of care is the consideration of puberty-delaying medical treatment through medications, often generically known as puberty blockers.

> **ANSWER:** The State denies the allegations set forth in paragraph 27 because they are vague and ambiguous.

28. Puberty-delaying medication interrupts the sequence of hormonal signals of the pituitary gland that control puberty. This means that the testicles or ovaries remain at a prepubertal stage that are incapable of production of testosterone (for a child born with testicles) or estradiol (for a child born with ovaries) that control the many bodily changes associated with puberty.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 28.

29. Puberty is a process that requires two to four years to complete. Therefore, a transgender girl who receives puberty blockers at the earliest signs of puberty will not experience the influence of endogenous testosterone on her physical characteristics.

**ANSWER:** The State denies that a transgender girl who receives puberty blockers at the earliest signs of puberty will not experience the influence of endogenous testosterone on her physical characteristics. The State denies the remaining allegations set forth in paragraph 29 because they are vague and ambiguous.

30. For example, she will not experience the increase in muscle mass and other muscle development that accompanies puberty stimulated by endogenous testosterone.

**ANSWER:** The State denies the allegations set forth in paragraph 30 because they are vague and ambiguous.

31. This treatment will mitigate gender dysphoria and aid with social transition as it prevents the child from experiencing the physical changes that would otherwise accompany her endogenous puberty.

**ANSWER:** The State denies the allegations set forth in paragraph 31 because they are vague and ambiguous.

32. After a child's endogenous puberty has been completely suppressed for months or even years exogenous gender affirming hormones are usually prescribed. These will initiate the physiological changes in body contour and appearance to match that of the youth's experienced

9

gender. For example, with gender-affirming hormone therapy, the transgender girl develops breasts, body fat distribution around the hips and buttocks, minimal or absence of facial hair, and muscle mass, strength, and response to physical training similar to that of birth-assigned girls.

> **ANSWER:** The State denies the allegations set forth in paragraph 32 because they are vague and ambiguous.

33. Playing a team sport with other girls is a prime method of social transition in that it allows a transgender girl to express herself in a manner consistent with her gender identity in a group setting where she will be accepted as a girl.

> **ANSWER:** The State denies the allegations set forth in paragraph 33 because they are vague and ambiguous.

34. There is a medical consensus that the largest driver of average difference in athletic performance between men and women is the elevated levels of testosterone that occur with advanced puberty among males.

> **ANSWER:** The State denies the allegations set forth in paragraph 34 because they are vague and ambiguous.

35. A transgender girl receiving puberty-delaying treatment will not have physical changes that boys experience through puberty and therefore will not have the height, weight, lean body mass, and muscle strength that occurs with puberty in boys.

> **ANSWER:** The State denies the allegations set forth in paragraph 35 because they are vague and ambiguous.

36. A transgender girl treated with puberty blockers therefore has no competitive advantages in athletic participation compared to other girls.

**ANSWER:** The State denies the allegations set forth in paragraph 36.

37. When a transgender girl is provided with gender-affirming hormone therapy (typically with estrogen and a testosterone blocker) after receiving puberty suppression, the physiologic effects of endogenous testosterone are never experienced. Her physical appearance resembles that of other similarly aged girls, with the exception of genitals that are those of a pre-pubertal child.  Thus, a transgender girl treated with puberty blockers followed by gender affirming hormones has none of the physical or competitive advantages traditionally associated with testosterone.

**ANSWER:** The State denies the allegations set forth in paragraph 37 because they are vague and ambiguous.

38. Prior to the passage of HEA 1041, the Indiana High School Athletic Association had in effect for its member schools a policy that allowed for female transgender students to participate in female-only sports if they received one year of hormone treatment and did not possess any physical or physiological advantages over a cisgender female of the same age group.

**ANSWER:** The State admits that prior to the passage of HEA 1041, the Indiana High School Athletic Association had in effect for its member schools a policy that allowed for female transgender students to participate in female-only sports. The State denies the remaining allegations in paragraph 38 as vague and ambiguous.

39. The National Collegiate Athletic Association, located in Indianapolis, Indiana, also has a policy that allows for transgender female students to participate in female sports based on documented sports-specific testosterone levels.

> **ANSWER:** The State admits that the National Collegiate Athletic Association is located in Indianapolis, Indiana. The State is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 39.

### A.M.

40. A.M. is just completing the fourth grade in one of the elementary schools within the Indianapolis Public Schools ("IPS").

> **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 40.

41. Although her birth-assigned sex was male, she informed her family before she was 4 years old that she was a girl and that she was having thoughts about mutilating her penis to get rid of it.

> **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 41.

42. Since that time, she has been living as a girl. She has consistently used her preferred female first name and has dressed and appeared as a girl.

> **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 42.

43. Very few persons outside of her immediate family know that her sex assigned at birth was male.

    **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 43.

44. Although her mother has informed her teachers and school administrators that A.M.'s sex assigned at birth was male, her fellow students know her only as a girl.

    **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 44.

45. Her teachers and school administrators recognize A.M. as a girl by, among other things, referring to her by her female first name and allowing her to use the girls' restrooms at the school.

    **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 45.

46. A.M. has been diagnosed with gender dysphoria.

    **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 46.

47. A.M. receives care through the Gender Health Clinic at Riley Hospital in Indianapolis.

    **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 47.

48. A.M. has been prescribed a puberty blocker and has been taking it by injection since August of 2021 after clinical documentation of the initial signs of puberty.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 48.

49. As a result, she is not experiencing any of the physiological changes, including muscle development, that increased testosterone levels would cause in a pubescent boy.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 49.

50. When appropriate, A.M. will be prescribed estrogen that will cause her to develop many of the physiological changes associated with puberty in females.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 50.

51. In the fall of 2021 a court in Marion County, Indiana entered an order changing the gender marker on A.M.'s birth certificate to female and changing her legal first name to her female first name.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 51.

52. The IPS elementary school that A.M. attends has a girls' softball team that plays in the late summer and fall.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 52.

53. A.M. was on the girls' softball team last year.

14

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 53.

54. The team played one other IPS school that also has a girls' softball team.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 54.

55. This year four elementary schools will field girls' softball teams, including A.M.'s elementary school.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 55.

56. A.M. very much enjoyed playing softball and doing so has helped to modify the distressing symptoms of gender dysphoria as it has allowed her to more fully experience her life as a girl.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 56.

57. For purposes of participating in school-sponsored sports and sports' teams, A.M. is similarly situated to other girls and not to cisgender boys.

**ANSWER:** The State denies the allegations set forth in paragraph 57 because they are vague and ambiguous. To the extent that the allegations set forth legal conclusions, they do not require an answer.

58. A.M.'s mother has been informed by staff at A.M.'s school that because of HEA 1041, A.M. will not be able to play softball this year.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 58.

59. A.M.'s school does have a boys' baseball team. However, she cannot play on that team as she is not a boy and no one at school views her as anything but a girl.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 59.

60. Forcing A.M to play on the boys' team would undermine the core part of her identity and undermine and contravene her treatment for gender dysphoria. It would be so traumatic for her that she would not participate on the boys' team.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 60.

61. Because of HEA 1041, A.M. is treated differently from other girls—and from every other student at school—because she alone cannot participate on school-sponsored sports' teams consistent with her gender identity.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 61.

62. Being denied the ability to participate on the girls' softball team is extremely distressing to A.M. as it is a painful and constant reminder that she is not accepted by the world as the girl that she is.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 62.

63. As A.M. progresses in school, she will continue to want to play girls' sports.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 63.

64. The only way that A.M. can be provided equal access to the benefits of school-sponsored athletics is if she is allowed to play on the same team as other girls.

**ANSWER:** The allegations in paragraph 64 set forth legal conclusions that do not require an answer. To the extent that paragraph 64 alleges facts, the State denies those allegations because they are vague and ambiguous.

65. Under HEA 1041, A.M. is subjected to different treatment from other students and prevented from participating in school-sponsored athletics because of the incongruence between her gender identity and her sex assigned at birth.

**ANSWER:** The allegations in paragraph 65 set forth legal conclusions that do not require an answer. To the extent that paragraph 65 alleges facts, the State denies those allegations because they are vague and ambiguous.

**Concluding Allegations**

66. During the Indiana General Assembly's consideration of the bill that became HEA 1041, the General Assembly had no evidence presented to it of any Indiana student in elementary, middle, or high school sports who was a transgender girl.

**ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 66.

67. The Indiana General Assembly did have evidence concerning one high school transgender girl student who attempted to be approved for competition as a girl by the Indiana High School Athletic Association, but who did not complete the process.

>   **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 67.

68. There was therefore no evidence presented to the Indiana General Assembly during its consideration of the bill that became HEA 1041 of any transgender girl in elementary, middle school, or high school sports in Indiana who gained any competitive advantage in playing female sports.

>   **ANSWER:** The State is without information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 68.

69. IPS is a recipient of federal funding and is therefore subject to Title IX.

>   **ANSWER:** The State admits that IPS is a recipient of federal funding. The remaining allegation in paragraph 69 sets forth a legal conclusion and does not require an answer.

70. At all times defendants have acted under color of state law.

>   **ANSWER:** The allegation in paragraph 70 is a legal conclusion and does not require an answer.

71. A.M. is being caused irreparable harm for which there is no adequate remedy at law.

>   **ANSWER:** The allegations in paragraph 71 are legal conclusions and do not require an answer.

**Legal Claims**

18

72. HEA 1041 denies A.M. and all transgender girls the ability to participate in the same sports as other girls solely because they are transgender. This represents discrimination on the grounds of sex in violation of Title IX, 20 U.S.C. § 1681(a), for which defendants are liable.

**ANSWER:** The allegations in paragraph 72 are legal conclusions and do not require an answer.

73. HEA 1041 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by improperly discriminating against A.M. and all transgender-female students because of their sex and transgender status and defendants are liable for this violation.

**ANSWER:** The allegations in paragraph 73 are legal conclusions and do not require an answer.

## GENERAL DENIAL

The State denies all allegations that are not specifically admitted or denied above.

## AFFIRMATIVE DEFENSES

Subject to reasonable opportunity for further investigation and discovery, the State alleges the following defenses:

1. HEA 1041 does not violate Title IX.

2. HEA 1041 does not violate the Equal Protection Clause

3. The State reserves the right to assert any and all additional affirmative and other defenses that may become applicable based on information learned during discovery or other appropriate reasons.

Date: June 30, 2022

Office of the Indiana Attorney General                    Respectfully submitted,
IGC-South, Fifth Floor
302 West Washington Street                               Theodore E. Rokita
Indianapolis, Indiana 46204-2770                         Indiana Attorney General
Telephone: (317) 232-6255
Fax: (317) 232-7979                            By:       *Thomas M. Fisher*
Email: Tom.Fisher@atg.in.gov                             Thomas M. Fisher
                                                         Solicitor General

                                                         James A. Barta
                                                         Deputy Solicitor General

                                                         Julia C. Payne
                                                         Melinda R. Holmes
                                                         Deputy Attorneys General